UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dennie R. Hall,	Case No. 3:14-cv-02532

    Plaintiff

v.	MEMORANDUM OPINION

Jonathon J. Huffman, et al.,

    Defendants

## I. INTRODUCTION

Plaintiff Dennie R. Hall brought suit against Defendants Jonathon J. Huffman and Eric S. Costante, individually, and the City of Sandusky under 42 U.S.C. § 1983 and state law, for civil rights violations arising out of an alleged "felony stop."

This matter comes before me on Defendants' motion for summary judgment. (Doc. No. 21), Plaintiff's opposition (Doc. No. 23), and Defendants' reply (Doc. No. 24). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, I find Defendants' motion well taken.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are

genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

Facts on summary judgment are ordinarily viewed in a light most favorable to the plaintiff. *Timm v. Wright State Univ.*, 375 F.3d 418, 422 (6th Cir. 2004). Where the record includes a videotape capturing the event in question, I am to view the facts in the light depicted in the videotape as well. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

### III. BACKGROUND

A. The "Felony Stop"

On November 19, 2012, Plaintiff Dennie R. Hall told Mary Bencivengo "he was dying," that she "needed to take him to the ER," and that he "didn't want to be charged [for an ambulance]." (Doc. No. 21-3 at pp. 2, 13). Ms. Bencivengo began driving westbound on State Route 6 toward Firelands Regional Medical Center in Sandusky, Ohio.

Ohio State Highway Patrol Trooper Andrew Geer, traveling eastbound on State Route 6, observed Ms. Bencivengo speeding. Trooper Geer's radar gun detected Ms. Bencivengo traveling 65 miles per hour in a 35 mile per hour speed zone. Trooper Geer made a U-turn and proceeded to follow Ms. Bencivengo.

Trooper Geer turned on his emergency lights and sounded an intermittent siren. Trooper Geer followed Ms. Bencivengo for 2.6 miles until she eventually stopped at the intersection of Monroe Street and Elm Street in Sandusky. The officers prepared to effectuate a "felony stop."

3

Plaintiff takes issue with Defendants' characterization of this event as a "felony stop," because Ms. Bencivengo's failure-to-comply violation was cited as a first-degree misdemeanor offense. (Doc. No. 21-2 at p. 5).

The Sixth Circuit has noted that to be characterized as a "felony stop" all occupants be removed from the vehicle at gunpoint, handcuffed, and placed in the back of separate squad cars. *Smoak v. Hall*, 460 F.3d 768, 773 (6th Cir. 2006). Under Ohio law, failure to comply is considered a felony-grade offense where the person operating the motor vehicle:

> (B) willfully . . elude[s] or flee[s] a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

Ohio Revised Code § 2921.331(B).

It is undisputed that Ms. Bencivengo was traveling 65 miles per hour in a 35 mile per hour speed zone. (Doc. No. 21-2 at p. 19). By traveling 30 miles per hour over the speed limit and disregarding the officer's siren and lights to stop, the officers had the right to effectuate a "felony stop" on Bencivengo's vehicle. *See, e.g., Zulock v. Shures*, 441 Fed. Appx. 294, 306 (6th Cir. 2010) (citing Ohio cases).

Further, even if the officers did not have a right to conduct a "felony stop" on Ms. Bencivengo's vehicle, the Supreme Court extends to passengers an officers right to remove a driver from a vehicle pursuant to a lawful traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S. Ct. 882, 884, 137 L. Ed. 2d 41 (1997). Trooper Geer stopped Ms. Bencivengo for failure to comply and speeding. (Doc. No. 21-2 at p. 5). The officers were, therefore, within their right to remove passenger Mr. Hall from the vehicle pursuant to a lawful traffic stop. I, therefore, find Plaintiff's argument to be without merit.

Following the officers preparation to effectuate the "felony stop," the following exchange took place by way of Officer Costante's dash camera video:

Trooper Geer:   Throw your keys out the window! Throw your keys out the window!

4

Officer Costante: Do it now!

[Ms. Bencivengo complied.]

Mr. Hall: … shut the fuck up and leave me alone! I want to go to the hospital!

Officer Costante: Open the door!

Ms. Bencivengo: He thinks he is dying! We're trying to get to the hospital!

Officer Costante: What's the injury? Do you have an injury?

Ms. Bencivengo: Let us get to the hospital! Please! There is no injury! He thinks he is dying! He's diabetic!

Officer Costante: We've got an ambulance rollin' here!

[Dispatch: … for a medical injury… possibly diabetic shock.]

(Doc. No. 22: Videotape: Dash Camera at 5:23-6:07) (Officer Costante 2012) (on file in Clerks' office).

Pursuant to Officer Costante's orders, Ms. Bencivengo gets out of the vehicle and walks backwards with her hands up toward Officer Costante's cruiser. You can hear Mr. Hall yelling profanities in the background.

The following exchange between Officer Costante and Mr. Hall took place next:

Officer Costante: Dennie!

Mr. Hall: What!?

Officer Costante: We've got an ambulance comin'! Keep your hands up!

Mr. Hall: Fuck the ambulance!... the fucking hell you do!... Do you have a gun?... You're out of your fucking mind!

Officer Costante: Put your hands up!

[Mr. Hall yelling profanities.]

Officer Costante: Put your hands up! Hands up!

5

[Officer Costante advising other officers to approach the vehicle]

[Mr. Hall complying with another officer's orders to put his hands up, then yelling profanities.]

Officer Costante:  Put your hands up!  Put your hands up!

Mr. Hall:   You guys are nuts.

Officer Costante: Hands up!  Hands where I can see them!

Mr. Hall:   … you drama son of a bitch.

Officer Costante:  Hands where I can see them!  Do it now!

[Officers enter the vehicle.]

Mr. Hall:   You big fucking drama freak… you got your gun out?

Officer Costante:  Yes…

Mr. Hall:   Yeah, then shoot me you motherfucker!  Are you stupid?  I'm trying to get to the hospital!

Officer Costante: We've got an ambulance coming!

Mr. Hall:   Fuck you!

Officer Costante:  Get out of the car!  Get out of the car!  Get out of the car!  Get out of the car or you're gonna get Tased!

(*Id.* at 8:02-9:07)

At this point in time, the parties' stories diverge.  Defendants allege Plaintiff "pulled away, clinched his fists and tensed his legs, to prevent being removed."  (Doc. No. 21-10 at p. 1).  Whereas Plaintiff alleges he was being pulled in opposite directions, which made it "impossible for him to comply with the request to exit the car."  (Doc. No. 23 at p. 5).  The video does not depict these facts.

Officer Huffman deployed his taser once to Mr. Hall's right upper thigh. "The probe was spread very short and [Mr. Hall] began to fight through the pain and move his arms upward, clinching his fist, as though he was going to strike at officers." (Doc. No. 21-10 at p. 2). Officer Huffman then used the taser in drive stun mode to Mr. Hall's left upper chest. After neuromuscular incapacitation was achieved, the officers removed Mr. Hall from the vehicle by his arms. Officer Huffman moved the Taser to Mr. Hall's left buttocks once he was on the ground, while other officers handcuffed him. Once detained, the ambulance escorted Mr. Hall to Firelands Regional Medical Center.

Officer Costante made contact with Mr. Hall inside Firelands Regional Medical Center. Mr. Hall advised Officer Costante he was having a "panic attack." (Doc. No. 21-3 at p. 2). He also commented, "'Mary should have been driving that way.'" (*Id.*). When told Ms. Bencivengo's vehicle was traveling at a speed greater than 60 miles per hour, Mr. Hall stated, "[G]ood for her, that's what she should be doing." (*Id.*). He stated "this was all a joke" and that the officers were going to "'pay.'" (*Id.*).

B. Procedural History

Mr. Hall filed the instant action against Officer Huffman, Officer Costante, and the City of Sandusky on November 18, 2014. The complaint alleges (1) excessive force and battery against Officer Huffman; (2) failure to intervene against Officer Costante; and (3) negligent hiring and supervision against the City of Sandusky. (Doc. No. 1).

Defendants filed a motion for summary judgment seeking qualified immunity from judgment.

## IV.     QUALIFIED IMMUNITY

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*,

__U.S. __, 137 S.Ct. 548, 554 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (internal quotation marks omitted).  The plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 2012 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  While the two-step procedure is not mandatory in all cases, it is "often beneficial" as "it [] may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

Such is the case here.  I will, therefore, begin the analysis by determining whether Officer Huffman's use of a taser violated Mr. Hall's Fourth Amendment rights.

## V. ANALYSIS

### A. Excessive force claim against Officer Huffman

1. Fourth Amendment violation

> A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Graham*, we held that determining the objective reasonableness of a particular seizure under the Fourth Amendment 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' 490 U.S., at 396, 109 S.Ct. 1865 (internal quotation marks omitted).  The inquiry requires analyzing the totality of the circumstances. *See Id.*

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020, 188 L. Ed. 2d 1056 (2014).

Three factors characterize the governmental interests at stake here: "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Laury v. Rodriguez*, 659 Fed. Appx. 837, 843 (6th Cir.2016) (citing *Graham*, 490 U.S. at 395, 109 S.Ct. 1865)). "[T]hese

8

factors offer guidance[, however,] and are not exhaustive; the ultimate question at all events is whether the totality of the circumstances that faced the officer at the time of his now-challenged actions 'justifie[d] [the] particular sort of seizure [he selected].'" *Tallman v. Elizabethtown Police Dep't*, 167 F. App'x 459, 468 (6th Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

My analysis must be from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Supreme Court "allows for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly-evolving—about the amount of force that is necessary in a particular situation." *Id.*

In consideration of the first *Graham* factor—the severity of the crime here—, Mr. Hall was charged with obstructing official business. Obstructing official business, in and of itself, is not a serious offense. *See Thomas v. Plummer*, 489 F. Appx. 116 (6th Cir. 2012). I must view this factor in the context of the facts at issue, however. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 958-59 (6th Cir. 2013) (examining the specific factual circumstances in evaluating the severity of the crime). Hall obstructed officers from effectuating a "felony stop" on an evading vehicle, a crime the Sixth Circuit considers "moderate" in severity. *See Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 774 (6th Cir. 2004). I therefore find this factor weighs slightly in favor of the Defendants.

The second *Graham* factor asks whether Mr. Hall posed an immediate threat to the safety of the police officers and public. Regarding the public, Mr. Hall posed no threat; he was in an immobilized car with no weapon. As for the police, the Sixth Circuit finds particularly salient whether the plaintiff was outnumbered by police officers. *See Meirthew v. Amore*, 417 F. App'x 494, 497 (6th Cir. 2011); *Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009). Here, Mr. Hall was outnumbered by five officers. Further, viewing the facts in a light most favorable to Plaintiff, Mr. Hall did not raise his fist to strike the officers until after the first taser deployment. I, therefore, find this factor weighs in favor of Plaintiff.

9

The third *Graham* factor—asking whether Mr. Hall "actively resisted" arrest—weighs in favor of Defendants.[1] The Sixth Circuit has "'often found that the reasonableness of an officer's use of a taser turns on active resistance.'" *Kent v. Oakland Cty.,* 810 F.3d 384, 392 (6th Cir. 2016). "[S]ome outward manifestation—either verbal or physical—on the part of the suspect [that] suggest[s] volitional and conscious defiance" to police orders must be present. *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013).

In *Eldridge,* the police officers pulled over a driver suffering from a hypoglycemic episode that had crashed into a construction barricade, assuming he was drunk. The police officers commanded he exit the vehicle, to which the driver softly responded, "I'm fine, thank you." *Id.* at 530. The officers did not find his insulin pump until after they had tased him and ordered him onto the ground. The Court found excessive force because "his noncompliance was not paired with any signs of verbal hostility or physical resistance, and therefore cannot be deemed active resistance." *Id.* at 535.

Here, Mr. Hall's noncompliance was clearly paired with verbal hostility. Further, Mr. Hall never reached a submissive posture, such that Mr. Hall had a right not to be tased. *See Kent v. Oakland Cty.*, 810 F.3d 384, 391 (6th Cir. 2016) (finding excessive force where plaintiff did not display "continued resistance and hostility"); *Thomas v. Plummer*, 489 F. Appx. 116 (6th Cir. 2012) (finding excessive force where officer tased plaintiff after she had ceased her verbal resistance, dropped to her knees, and put her hands above her head). Viewing this factor from a totality of the circumstances, I find Mr. Hall's noncompliance coupled with verbal hostility and his failure to reach a submissive posture suffices to tip this factor in favor of Defendants.

---

[1] Plaintiff argues "Since he was never under arrest, he could not have committed the offense of resisting arrest. . . ." As I stated, Mr. Hall's obstruction of official business (i.e., the officers' lawful right to request he exit the vehicle), was grounds for an arrest. I, therefore, find Mr. Hall's argument to be without merit.

10

I also note two additional considerations. First, the significance of Officer Huffman tasing Mr. Hall when he was undergoing a supposed medical emergency and the fact the officers did not advise Mr. Hall he was under arrest at any time prior to tasing him. Neither the Sixth Circuit or the Supreme Court has addressed this issue. The Tenth Circuit has addressed the reasonableness of force in the face of the "special characteristics" of a plaintiff as follows:

> [T]he reasonableness of a particular use of force depends in part on whether the law enforcement officers knew or should have known that the individual had special characteristics making him more susceptible to this particular use of force. For instance, in *Cruz v. City of Laramie*, 239 F.3d 1182 (10th Cir. 2001), we found the use of hog-tie restraints to be unreasonable when officers know or should be on notice that the subject has diminished capacity and is accordingly more likely to experience positional asphyxia from the use of such restraints.

*Aldaba v. Pickens*, 777 F.3d 1148, 1156 (10th Cir.), *cert. granted, judgment vacated*, 136 S. Ct. 479, 193 L. Ed. 2d 347 (2015). In the *Cruz* case, the appellate court addressed the issue of diminished capacity of a plaintiff in the following manner:

> This diminished capacity might result from severe intoxication, the influence of controlled substances, a discernible mental condition, or any other condition, apparent to the officers at the time, which would make the application of a hog-tie restraint likely to result in any significant risk to the individual's health or well-being. In such situations, an individual's condition mandates the use of less restrictive means for physical restraint.

*Cruz*, 239 F.3d at 1188.

Here, the officers were on notice Mr. Hall was under a medical emergency from Ms. Bencivengo. Officer Costante advised Mr. Hall in the presence of other officers an ambulance was on its way; the radio dispatch noted a medical injury, "possibly diabetic shock." Mr. Hall told the police officers he was "trying to get to the hospital." Mr. Hall's medical condition, however, was not discernible or apparent to the officers at that point in time. Therefore, based on guidance of the Tenth Circuit, I decline to consider whether Mr. Hall's medical condition necessitated a lesser use of force.

Second, "[t]he general consensus among [Sixth Circuit cases] is that officers cannot use

11

force… on a detainee who… is not told he is under arrest..." *Gravey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009). But, in the excessive force context, if it is "objectively apparent" that the suspect is being detained, the Sixth Circuit disregards an officers failure to state he was under arrest. *Goodwin v. City of Painesville*, 781 F.3d 314, 326 (6th Cir. 2015). For example, in *Cockrell v. City of Cincinnati*, 468 F. App'x 491 (6th Cir. 2012), "the suspect's flight and the officer's subsequent pursuit made it clear to the suspect before the Taser was fired that the officer intended to apprehend him." *Id.* This in contrast to the facts in *Eldridge* and *Goodwin*, where the officers' mere request to "step outside" does not make clear the officers' intention to detain the suspects.

Here, four officers approached Mr. Hall at gunpoint. A reasonable person would believe he was subject to detainment. I therefore find this factor weighs in favor of Defendants as well.

Therefore, based on two of the three *Graham* factors weighing in favor of Defendants, as well as my additional considerations, I find Plaintiff was not subject to a Fourth Amendment violation.

2. <u>Clearly established right</u>

I further find Officer Huffman's actions did not violate a clearly established right the night of November 19, 2012.

As of that date, there was Sixth Circuit precedent to sustain a qualified immunity challenge to an excessive force claim where the plaintiff did not exhibit verbal hostility. *See Meirthew v. Amore*, 417 F. App'x 494, 497 (6th Cir. 2011) (finding excessive force, in part, because suspect made "no verbal or physical threats"); *Landis v. Baker*, 297 F. App'x 453, 456 (6th Cir. 2008) (finding excessive force, in part, because the suspect "'gave no verbal resistance'") (internal citation omitted). *See also, Getz v. Swoap*, 833 F.3d 646, 648 (6th Cir. 2016) (officer entitled to qualified immunity where during the attempt to arrest the plaintiff, the individual was angry, uncooperative, and combative).

Outside the Sixth Circuit, courts have sustained excessive force claims where the suspect

expressed verbal hostility. *Courson v. McMillian*, 939 F.2d 1479, 1496 (11th Cir. 1991) (finding no excessive force, in part, because a detainee became "unruly and verbally abusive"); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding no excessive force where suspect "repeatedly refused to comply with [the officer's] [] commands," was "hostile, belligerent, and uncooperative," and "used profanity").

In this case, there is no dispute Mr. Hall was verbally combative with the officers at the scene and would not comply with their directives. In light of these undisputed facts, I find Mr. Hall has failed to establish the Defendants violated a clearly established right as a matter of law.

**B. State Law Claims**

Supplemental jurisdiction of state-law claims is not exercised where a court dismisses federal law claims on summary judgment. 28 U.S.C. §1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996)); *Bradenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims under the circumstances presented by this case, 'the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment'").

## VI. CONCLUSION

For the reasons stated above, Officer Huffman is entitled to qualified immunity as a matter of law. Further, as there is no longer a basis for Plaintiff's excessive force—failure to intervene—claim against Officer Costante, he is entitled to qualified immunity as well. The Defendants' motion for summary judgment (Doc. No. 20) is granted.

Finally, as I decline to exercise jurisdiction over Plaintiff's state law claims, those claims are dismissed without prejudice.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge